## J. STERLING MORTON *et al.*

*v.*

## JAMES P. SMITH, JR., *et al.*

1. GIFT—*of profits of property acquired under trust deed, valid as against heir of grantor.* Where A had given a deed of trust to B of certain real estate, and a mortgage to another party, which B purchased, and, on foreclosure of the trust deed in due form, B became the purchaser of the entire property for the whole sum due him, and, after he had become the absolute owner thereof, made a proposition in writing to a grandson of B, to hold the property for four years, and give such grandson the profits realized from sales of the property over and above the sum for which the same was purchased, with semi-annual interest to be compounded, to be in trust for the daughters or wife of the grandson, and the sales of a portion of the property satisfied the claim of B, whereupon he conveyed the remaining part of the property to the wife of the grandson, it was *held*, that the daughter and sole heir of B had no claim, legal or equitable, to the property so conveyed, or to the proceeds of the part afterwards sold by the grantee, even though B, at the time of the arrangement, did not know that A had an heir.

2. MISTAKE—*cured by subsequent deed from holder of the legal title.* Even though property is misdescribed in a trust deed, under which title is acquired by foreclosure, yet if the assignee of the grantor in the trust deed afterwards conveys the property by a proper description to a grantee of the purchaser under the trust deed, the mistake will be cured, so far as respects the heir of the grantor in the deed of trust.

3. SAME—*equity will not give an advantage from.* A court of equity seems hardly the proper place of resort for the availing of an advantage derivable through a mistake in the description of land in a deed, its more appropriate exercise of jurisdiction being in relief against mistakes and their correction.

4. ALLEGATIONS AND DECREE—*relief must be in accordance with frame of bill.* Where a bill in chancery, seeking to reach property sold under a trust deed, placed the sole ground of relief on the fact that the trust deed was fraudulent, there being no debt actually due, and made no allusion to any misdescription of the property, it was *held*, that no relief could be granted for such misdescription.

APPEAL from the Superior Court of Cook County; the Hon. S. M. MOORE, Judge, presiding.

This was a bill in equity in respect to certain real property claimed as having been held in trust, by the appellees, for Hiram Joy in his life-time, and since his death for Carrie A. F. Morton, his daughter and sole heir.

. The following facts appear : Hiram Joy was at a former time engaged in the ice business at Chicago, with Augustus Frisbie, under the firm name of Joy & Frisbie. The partnership continued for a period of several years, until December 8, 1860, when the firm, having become largely involved in debt and utterly insolvent, made an assignment to Henry Fuller of all their property and effects for the benefit of their creditors. On December 10, 1860, Joy made an individual assignment for the benefit of his creditors to his brother-in-law, James P. Smith, Sr., any surplus to be paid to the creditors of the firm of Joy & Frisbie.

Prior to these assignments, and on November 1, 1855, Joy had executed a mortgage to one Gorham, to secure the payment of $4,000, upon block 75 in canal trustee's subdivision. Afterwards, and on January 1, 1859, for the stated consideration of love and affection and $1, he conveyed the north-east quarter of said block to Cora E. and Bell Smith, the infant children of James P. Smith, Jr., his nephew ; this deed, however, was not recorded until October 8, 1859, and the consideration, in fact, seems to have been the firm indebtedness to Smith. Prior to which time, and on August 19, 1859, Joy & Frisbie executed two trust deeds to Ephraim Ingalls, trustee, to secure the payment of their respective notes for $2,050 and $4,050, payable to L. C. P. Freer, and the trust deeds were recorded on that same day, thus becoming a paramount lien to the deed to Smith's daughters.

Freer purchased the Gorham note and mortgage, and took an assignment of the same to himself. Afterwards, on February 18, 1861, the trust deeds to Ingalls were foreclosed by the sale of the property covered by them under a power of sale in the deeds, subject to the Gorham mortgage, and Ingalls became the purchaser for the sum of $10,354.54, being the whole amount due upon the Gorham mortgage and the trust deeds, together with the expenses of sale, and Ingalls, by deed of that date, conveyed the property to Freer.

A few days afterward Freer executed a paper which he calls a proposition. This, in substance, recites the fact and the date of the purchase of the property under the trust deeds; what the property stood him in at cost price, to wit, $10,354.54; that he does not wish to make any profit on the land more than ten per cent semi-annual interest; his willingness, in case anything can be realized, that it shall inure to the family of James P. Smith, Jr., nephew of Joy, who he is satisfied has suffered by the misfortunes of Joy; that to that end he was to hold the property for a market for the period of four years, subject to the conditions therein stated: that is, that he would set down in account the cost price of the property, the taxes on it, and ten per cent interest thereon, to be compounded semi-annually; that at any time during the four years, upon Smith's request, he was to sell specified parcels of the property at the minimum prices which were therein fixed, the proceeds to be applied to the credit of the account. Also Smith was to pay Freer $500 each year, payable quarter-yearly, to be likewise entered, when made, on the credit side of the account, interest to be allowed in the manner above on the credits. At the end of four years from date the account was to be balanced, and any balance due Freer to be then paid, and upon its payment Freer was to convey the remaining unsold portion of the property to Smith as trustee, or to such person as he should direct. It names that the proposition was made without consideration, upon Freer's mere motion, and with the simple desire to give a relative of Joy any profits that can be made out of the land; that he made the proposition to Smith as trustee for and of his daughters, Cora Ellen and Bell Smith, and in the case of their death such profits to inure to Smith's wife.

This paper is signed by Freer, and bears date February 18, 1861, the day of the sale under the trust deeds, but was in fact made some days afterward, and was dated back, as Freer says, as a matter of convenience to show the date of the account.

Freer kept the account as proposed, and there were sold off, from time to time, portions of block 75, when it was found that they had realized sufficient to pay Freer off in full without disposing of any portion of the lots 6 and 7 in block 118, above mentioned. They therefore made a full settlement, and Freer subsequently, by quitclaim deed dated February 21, 1865, conveyed lots 6 and 7 in block 118 to Laura A. Smith, the wife of James P. Smith, Jr., in fee simple absolute. Laura A. Smith and her husband subsequently sold and conveyed to different persons all of said premises, with the exception of twenty feet of lot 6 fronting on Monroe Street, which is left remaining unsold.

The claim by the bill is that James P. Smith, Jr., and his wife came into possession of said lots in block 118, and held the same, as trustees for Hiram Joy; that they should account to Carrie A. T. Morton, the only heir of said Joy, for the proceeds of the part sold, alleged to amount to $35,780, and should convey to her the portion remaining unsold.

The court below, upon final hearing, dismissed the bill, and the complainants appeal.

Messrs. WALKER, DEXTER & SMITH, for the appellants.

Mr. E. A. SMALL and Mr. FRANK J. CRAWFORD, for the appellees.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

There is no question made as to the regularity of the foreclosure proceedings upon the deeds of trust, or the validity of the title acquired thereunder by Freer, with the exception of one parcel of property which will hereafter be noticed.

All that there is in the testimony upon which to rest the complainant's case appears to be the paper made by Freer — termed a proposition, taken in connection with the situation of the parties, and the statement made by Freer in his testi-

mony in explanation of his proposal, that he had a constant purpose in his life never to make money in such a sale if there was any proper beneficiary of it, and that he never had. And the position is taken by appellants that under the circumstances the trustee's deed to Joy, and the proposition, should be construed simply as an extension of the trust deeds, or as a mortgage; and that, after the debt to Freer was paid by the sale of block 75, Freer had no right to convey the remainder to Laura A. Smith except in trust for Joy and his creditors, and that she so held it. There would be more of ground for such a claim had this proposition been made before or at the time of the sale under the trust deeds; or if there had then been any agreement or understanding to a similar effect shown in that proposition between Freer and Joy, or Frisbie. But the evidence is distinct that there was no such understanding; that not a word had been said upon the subject before or at the time of the sale; that it was after that time when Freer first broached the idea to any of the parties that he was willing to relinquish any profits to be realized from the land, and that he took time to consider in whose favor he would make the relinquishment.

Freer then became, by his purchase, the absolute owner of the property. Joy or Frisbie had no more legal or equitable claim in respect to it than any other person. The sole power of disposition of it was with Freer. It may seem more proper and just that Joy or his daughter should have been allowed the profits arising upon sale of the property, than the Smiths. Had Joy been unembarrassed by debt, and in a condition to enjoy himself the benefit, without having it appropriated to the use of creditors, we may presume he would have been made the beneficiary, instead of the Smiths. But, however that may be, it is not the question what *ought* Freer to have done, but what *did* he do. The writing made by Freer is the carefully prepared and proper evidence of that, and it must govern. That distinctly declares the trust in favor of the Smiths, and

gives to them the benefit, and affords no trace of a trust or any benefit in favor of Joy. Nor is it materially helped, in respect of benefit to the latter, by the attending circumstances. The evidence shows that Joy expressed much satisfaction with the arrangement which was made by Freer, and remarked upon it as being " a very clever thing." It met the concurrence of Frisbie, also.

The fact that Freer, at the time he made such arrangement, was not aware that Joy had a daughter is urged in favor of appellants, as a ground of supposition that, had he known that fact, his action would have been in favor of such daughter.

Freer himself, in answer to an explicit question in that regard, says : " The mere fact that he (Joy) had a daughter would not have made any difference in my plans. If he had had a daughter in whom I felt an interest — if I had been acquainted with her, and knew her to be in needy circumstances — it might have made a difference," and continues : " There were three or four considerations that induced me to make this proposition to Mr. Smith, Jr. : First, Mr. Joy, at the time of his embarrassment, a short time after the assignment, expressed considerable sympathy for Mr. Smith ; secondly, I knew that some time previous he had made provision for the daughters of Mr. Smith out of a portion of his property — that they had lost the benefit of it by not having recorded the deed in season ; thirdly, I felt considerable friendship for Mr. Smith, as he was a young man, and had been somewhat unfortunate in his connection with the firm. These were some of the considerations."

Concerning the relations of the parties more particularly, it appears that the daughter of Joy, Mrs. Morton, was born in 1832 or 1833, and hence was about forty-two years of age when she and her husband filed their bill in this case, in the early part of 1875. Her mother died when she was about twenty months old, and she was adopted by a Mrs. French, and went by the name of French until 1854, when

she was married to Mr. Morton at Detroit, Michigan, where she resided. After her adoption by Mrs. French she never lived with her father, Hiram Joy. On their marriage, in 1854, Mrs. Morton and her husband moved to Nebraska City, Nebraska, where it seems they have ever since resided.

It appears that Mr. Joy came to Chicago in or about the year 1848, where he continued to reside from that time until his death, in 1868 ; that until about the time of his assignment he boarded at the Tremont House in Chicago, and from thence, until his death, with his sister, the wife of James P. Smith, Sr.

James P. Smith, Jr., appears to have been a great favorite of his uncle, Mr. Joy, and was for a long time in the service of Joy & Frisbie when they carried on the ice business together. In view of the circumstances and relations of the parties there is no sufficient reason to believe from the testimony that, if Mr. Freer had had knowledge, at the time, of the existence of the daughter of Joy, it would have made any difference in the action which he took in regard to this property.

Upon a survey of the entire case as exhibited by the proofs, we can but view it as an attempt to overhaul a disposition which a man has made of his own property, upon the simple ground that in the view of others a more proper and just disposal of it might have been made. Whatever the claim of appellants be, we regard it as but a moral claim, without the basis of any legal or equitable obligation.

In the argument, a special point is made peculiar to the property in lot 7 in block 118 — being fifty feet fronting on the alley and running back a depth of eighty-nine feet— that the trust deeds to Ingalls under which the foreclosure proceedings were had were null and void, so far as this property is concerned, because of a misdescription of the property. .The description of the property in the trust deeds was : " The north eighty-nine (89) feet by fifty (50) feet front on the alley of lot 7 in block one hundred and

eighteen (118) in the School Section addition to Chicago,'' the correct description being the east 50 feet of the north 89 feet of lot 7.

This mistake would seem to have been cured, so far as respects appellants, by a quitclaim deed of the property to Laura A. Smith from James P. Smith, Sr., the assignee of Joy under the deed of assignment executed by Joy to Smith for the benefit of Joy's creditors, of date December 10, 1860, which, as well as the quitclaim deed, described the property correctly; the quitclaim deed having been made August 1, 1868, a short time before the death of Joy.

A court of equity seems hardly the proper place of resort for the avail of an advantage derivable through a mistake; its more appropriate exercise of jurisdiction being in relief against mistakes, for their correction.

But it is a sufficient answer, upon the last head, that the bill is not framed with a view to any such relief, nor is the alleged misdescription mentioned in the bill. The sole charge in impeachment of the trust deeds is: '' That the complainants are advised and believe that the trust deeds to Ingalls were without consideration; that said Joy & Frisbie were not at that time indebted to said Freer in any sum; and that Freer did not loan or advance them any money therefor.'' Indeed, the bill recognizes the fact that Freer took a title to the property. It contains the allegation that '' the title to the property purchased by Freer at the Ingalls sale remained in him until February 21, 1865, when Freer and wife conveyed it to Laura A. Smith.''

In the view we take, we deem it unnecessary to consider the defense of laches which is set up in the answers.

We regard the decree dismissing the bill as right, and it is affirmed.

*Decree affirmed.*